# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| KASIM ALSHAMSAWI,<br><br>        Plaintiff,<br><br>vs.<br><br>ERIC H. HOLDER, Attorney General, *et al.*,<br><br>        Defendants. | ORDER and MEMORANDUM DECISION<br><br><br><br>Case No. 2:10-CV-194 CW |

In this action, Plaintiff Karim AlShamsawi has brought an action against Defendants requesting that his application for a change in immigration status be adjudicated. Now before the court are Defendants' motion to dismiss or for summary judgment (Dkt. No. 10) and Mr. AlShamsawi's motion for summary judgment (Dkt. No. 23). For the reasons discussed below, Defendants' motions are DENIED and Mr. AlShamsawi's motion is GRANTED.

## BACKGROUND

Mr. AlShamsawi is a native of Iraq who currently resides in Salt Lake City, Utah. Mr. AlShamsawi was admitted to the United States in 1997 as a refugee. In December 2004, Mr. AlShamsawi filed a Form I-485 to seek an adjustment of his status from refugee to legal permanent resident. To date, Mr. AlShamsawi's application has not been adjudicated by the United States Customs and Immigration Service. On March 3, 2010 Mr. AlShamsawi filed a complaint in this court under the Administrative Procedures Act, 5 U.S.C. § 702 *et. seq.* (the

"APA").[1] Mr. AlShamsawi asserts that the USCIS has unreasonably delayed resolving his application. He seeks an order directing the USCIS to quickly process his I-485.

The Defendants argue that the delay has not been unreasonable, citing many factors leading to the now over six years since the application was filed. The main reason for the delay at this point is that Mr. AlShamsawi's application has been on administrative hold since 2008. This hold, the Defendants state, is meant to benefit Mr. AlShamsawi. The Defendants explain that Mr. AlShamsawi was involved in an uprising in Nasiriyah, Iraq in March 1991 in which he joined a movement against the Sadaam Hussein regime, manned a checkpoint, and carried a weapon. According to the Defendants, Mr. AlShamsawi's activites in that uprising make him statutorily inadmissible to the United States because he engaged in terrorist activity and/or supported a terrorist organization as those terms are defined in the federal immigration statute.[2] The Defendants explain that there is a provision in the immigration statute allowing the government to exempt and admit as residents certain applicants who otherwise be inadmissible because of terrorist activity. In deciding whether to grant such an exemption, several federal agencies must consult with each other. In the past, various exemptions have been granted to

---

[1] Mr. AlShamsawi also seeks relief under the Mandamus Act, 28, U.S.C. § 1361 and the Declaratory Judgement Act, 28 U.S.C. ¶¶ 2201 & 2202. The relief he seeks under either the APA, the Declaratory Judgment Act and the Mandamus Act are basically the same, *i.e.* an order requiring adjudication of his application. The court will accordingly analyze his claim as if only made under the APA. *See Al Karim v. Holder*, Civ. Action No. 08-cv-00671-REB, 2010 WL 1254840 at *1, n.2 (D. Colo. March 29, 2010).

[2] At several points in his briefing on these motions, Mr. AlShamsawi disagrees with the Defendants' characterizations of to the facts about his participation in the uprising. He also contests their view of the legal implications of his activities. The court is without jurisdiction to weigh in on those issues, which are, at least at this stage, for the USCIS to decide. In this case, the court's role is to judge the reasonableness of the delay in deciding on the I-485, not to delve into the merits of the application itself.

broad groups of individuals who engaged in statutorily defined terrorist activities and would qualify as terrorist organizations.

On March 26, 2008, the deputy director of the USCIS instructed that applications that could benefit from a future exemption should be placed on hold. Mr. AlShamsawi's application fell under this directive. The Defendants assert that if they are ordered to decide on Mr. AlShamsawi's application now, it is likely to be denied and then deportation proceedings against him could commence. They contend that Mr. AlShamsawi is thus better off having his application held and not decided now.

## ANALYSIS

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party moving for summary judgment "bears the initial burden of demonstrating an absence of a genuine issue of material fact." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002) (citation omitted). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Id.* (citation omitted). "An issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When "applying this standard, [courts] examine the factual record in the light most favorable to the non-moving party." *Narotzky v. Natrona Cnty. Mem'l Hosp. Bd. of Trs.*, 610

F.3d 558, 565 (10th Cir. 2010) (internal quotation marks and citation omitted).[3]

Mr. AlShamsawi's claim for adjudication arises under section 706 of the APA, 5 U.S.C. § 706. Under that section, a court may compel an agency to act if the agency has "unlawfully withheld or unreasonably delayed" taking action. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) (quoting 5 U.S.C. 706(1).) To determine whether there has been an unreasonable delay requiring a court order, courts consider "(1) the extent of the delay, (2) the reasonableness of the delay in the context of the legislation authorizing agency action, (3) the consequences of the delay, and (4) administrative difficulties bearing on the agency's ability to resolve an issue." *Qwest Commc'ns Int'l Inc. v. Federal Commc'ns Comm'n*, 398 F.3d 1222, 1239 (10th Cir.2005).

Here, the *Qwest* factors are either in equipoise or point in favor of granting Mr. AlShamsawi's claim for immediate adjudication of his I-485. First, the delay is now well over six years.[4] As a practical matter, though, the delay has become indefinite. As just explained, Mr.

---

[3] The court is satisfied that it has jurisdiction over Mr. AlShamsawi's claim, since the court herein will make no ruling on the merits of Mr. Alshamswi's application. Rather, the court will only rule on the reasonableness of the delay under the APA, an issue over which this court has unquestionably has power. *See Forest Guardians v. Babbitt*, 164 F.3d 1261, 1269 (10th Cir. 1998). Defendants argue that 8 U.S.C. § 1252(g) bars the court from hearing this case. On this point, the court joins the majority of district courts in holding that § 1252(g) is limited to the deportation context and does not preclude review of whether there has been an unreasonable delay in adjudicating an application. *See Al-Rifahe v. Mayorkas*, Civil No. 10-1971 (JRT/FLN), 2011 WL 825668, *5 (D. Minn. March 7, 2011) (collecting cases holding that § 1252(g) does not bar review in unreasaonable delay cases). Accordingly, the court denies and will not further analyze the government's motion to dismiss for lack of jurisdiction.

[4] "Although there is no specific statutory time requirement for the USCIS to adjudicate I-485 applications, Congress has set a normative expectation that a reasonable period is 'not later than 180 days after the initial filing of the application.'" *Al Karim*, 2010 WL 1254840 at *3 n.8 (quoting 8 U.S.C. § 1571 and citing *Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1144 (D. Ariz. 2008)).

4

AlShamsawi's application is on hold pending a possible reclassification of all of those people involved in the Nasiriyah uprising. The Defendants, however, have not asserted that there is any set deadline by which such a reclassification must be made. Nor have they shown that there is some time by which they intend to adjudicate Mr. AlShamsawi's application. An indefinite delay or extremely protracted delay tip the first factor in Mr. AlShamsawi's favor.

As to the second factor, the context of the legislation unquestionably makes some level of delay inevitable. Deciding whether to grant an exception to Mr. AlShamsawi (and others like him) is a "delicate and difficult task" in which the USCIS strives to "maintain consistency and make reasoned decisions." *Al Karim v. Holder*, Civ. Action No. 08-cv-00671-REB, 2010 WL 1254840 at *3 (D. Colo. March 29, 2010). That task requires several agencies to consult each other and involves "complex" issues. *Id.* Moreover, the court is highly sensitive to the national security and foreign relations aspects of this case. Without a doubt, the government is justified in making decisions like this one in a deliberate manner, and the court is exceedingly reluctant to intervene except with great care. It is thus reasonable in a case like this one to take time, even a great deal of time.

Yet even in the face of this delicate and challenging task, there is an obligation to adjudicate Mr. AlShamsawi's application within a reasonable time. An indefinite delay, or at least an over-six year delay in this case, is not reasonable. First, the Defendants concede that they cannot identify any concrete prejudice to them or others in adjudicating Mr. AlShamsawi's application now. If this case involves national security or foreign policy repercussions, such repercussions seem inevitable. After all, unless the delay reflects an intention never to decide, Mr. AlShamsawi's application must be decided at some point. The Defendants have not shown

any advantage to further delaying the decision.

Moreover, it is true that there is nothing legally suspect about the practice of deciding exemptions on a group basis and not on an individual basis. Indeed, many applicants have benefitted from this system, and many of them likely enjoyed those benefits in a timely manner as well. But in this particular case, this practice has lead to an unreasonably long delay for Mr. AlShamsawi. As the court in *Al Karim* noted, the possibility that an applicant's group may one day receive an exemption "does not justify leaving [a] plaintiff's application in an indefinite state of limbo." *Id.*

Notably, several other courts have agreed with this reasoning. In addition to *Al Karim*, various district courts hearing APA relief cases brought by applicants whose 1-485 forms are stayed by the March 26, 2008 directive have either found unreasonable delay or denied motions to dismiss by the government asserting that the delay was reasonable. *See Al Karim*, 2010 WL 1254840 (granting applicant immediate adjudication after eight year delay), *Sedighi v. Holder*, No. 07-CV-1881-BR, 2011 WL 1974508 (D. Or. July 2, 2009) (referring to an earlier ruling that over six year delay was unreasonable and grant of immediate adjudication), *Al-Rihafe v. Mayorkas*, Civil No. 10-1971 (JRT/FLN), 2011 WL 825668 (D. Minn. March 7, 2011) (denying government's motion to dismiss or for summary judgment in case where applicant had waited over 13 years); *Bestir v. Holder*, Civ. Action No. 10-652 (RMU), 2011 WL 204798 (D.D.C. Jan. 24, 2011) (same for a wait of over six years), and *Panchishak v. Department of Homeland Sec.*, No. 08 Civ. 6448 (WHPP), 2009 WL 2135299 (S.D.N.Y. July 15, 2009) (denying motion to dismiss for six year delay). *But see Khan v. Scharfen*, No. 08-1398 SC, 2009 WL 941574 (N.D. Cal. April 6, 2009) (denying relief under APA). These cases all support the proposition that even

6

in this delicate area, over six years is an unreasonably long delay. Accordingly, the second factor tilts toward Mr. AlShamsawi.

As to the third factor, the consequences of the delay, the Defendants argue that the delay actually helps Mr. AlShamsawi. They contend that if Mr. AlShamsawi prevails, his application will likely be denied. The main problem with this argument is that it is largely speculative. Until the question is posed in the actual and not the hypothetical, the Defendants cannot say with certainty what the outcome will be. The Defendants have thus tried to put this issue in the wrong frame. The proper focus on this prong of the inquiry as the consequences of ordering Mr. AlShamsawi's application adjudicated now against the consequences of not doing so.

If his application is adjudicated now, it will either be approved or rejected. If it is approved, Mr. AlShamsawi will obtain the benefits associated with being a legal permanent resident and immediately be eligible to apply for citizenship. If it is rejected, which the Defendants assert is the most likely outcome, Mr. AlShamsawi can go about seeking whatever relief may be available in that event. While the Defendants point out that Mr. AlShamsawi may be subject to removal proceedings before any reconsideration or appeal of a denial is complete, it does not appear that removal would be immediate. Mr. AlShamsawi seems to have some recourse in such proceedings. Further, Mr. AlShamsawi has asserted that he knows that removal proceedings could commence against him if he is denied, and that he is willing to deal with such proceedings in that event. Moreover, it does not appear that it is a certainty that removal proceedings would immediately being upon denial.

If, on the other hand, the court does not mandate the adjudication now, Mr. AlShamsawi will maintain the benefits of his refugee status during the duration of the delay. But Mr.

AlShamsawi will also continue to be on hold indefinitely, without any guarantee that his group will ever be considered for an exemption.  Moreover, since the March 26, 2008 directive appears to be discretionary, it may be changed at any time.  If it is changed, and if an exemption is not yet available to him when it does, his application could be denied at that point.  Even if further delay can be said to benefit Mr. AlShamsawi, then, the value of this benefit is difficult to determine at this point.  Further delay also gives no Mr. AlShamsawi any guarantee as to outcome.

With this in mind, there are potentially positive and negative consequences of allowing the delay to continue and to granting immediate adjudication now.  The consequence prong, then, does not strongly favor either side.

Finally, the fourth *Qwest* factor favors Mr. AlShamsawi.  As alluded to above, the Defendants have convinced the court that their task here involves considerable administrative difficulties.  They have not persuaded the court, however, that these difficulties justify a delay of over six years, much less an indefinite delay.

## CONCLUSION AND ORDER

For the reasons set forth above, the court ORDERS as follows:

Defendants' motion to dismiss or in the alternative, for summary judgment (Dkt. No. 10) is DENIED; and

Mr. AlShamsawi's motion for summary judgment (Dkt. No. 23) is GRANTED.

The USCIS is ORDERED to ADJUDICATE Mr. AlShamsawi's I-485 application within thirty days of the date of this Order.  Within fourteen days of the adjudication of Mr. AlShamsawi's I-485 application, the Defendants are ORDERED to FILE a notice with the court reporting the outcome of the adjudication.  Within ten days of the date of this Order, Mr.

AlShamsawi is ORDERED to FILE a notice specifying the claims that remain in this action and suggesting what further action, if any, is anticipated, requested, or required in this matter.

SO ORDERED this 13th day of May, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Judge